# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| HAKOP ARSHAKYAN, *et al.*, | CV 16-04305 TJH (RAOx) |
| Plaintiffs, | |
| v. | |
| X17, INC., *et al.*, | Order |
| Defendants. | |

    The Court has considered the joint motions of Plaintiffs Hakop Arshakyan, Maximiliano Lopes, and Sandro Rodrigues for partial summary judgment [dkt # 122]; Defendant Francois Navarre's motion for partial summary judgment [dkt # 134]; Defendant X17, Inc.'s ["X17"] motion for partial summary judgment [dkt # 142]; and Plaintiffs' *ex parte* application to strike X17's motion for partial summary judgment [dkt # 145]; together with the moving and opposing papers.

    X17 is a photo agency that self-publishes photographs of various celebrities seen living their day to day lives, and then licenses and distributes those images to various media companies. Navarre is the sole shareholder of X17. X17 acquires its photographs of celebrities from various photographers, including Plaintiffs Arshakyan, Lopes, Rodrigues and Roberto Maciel [collectively, "the Photographers"].

There are two overarching issues in this action. First, whether the Photographers were employees or independent contractors of X17? Second, who owns the copyrights to the photos taken by the Photographers during their working relationship with X17?

The Photographers filed this action, seeking declaratory relief regarding copyright ownership, as well as alleging various state law employment claims, such as, *inter alia*: (1) Failure to pay minimum wage, in violation of Cal. Lab. Code § 1182.12; (2) Failure to pay overtime wages, in violation of Cal. Lab. Code § 510; (3) Failure to provide meal periods, in violation of Cal. Lab. Code §§ 226.7 and 512 and various Industrial Welfare Commission ["IWC"] wage orders; (4) Failure to provide rest periods, in violation of Cal. Lab. Code § 226.7 and various IWC wage orders; (5) Unfair competition, in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. ["UCL"], [collectively, "Wage and Hour claims"]; (6) Harassment that constituted a hostile work environment, in violation of California's Fair Employment and Housing Act, Cal. Govt. Code. § 12900, *et seq*. ["FEHA"]; and (7) Failure to prevent harassment, in violation of FEHA.

On August 7, 2017, X17 filed counterclaims against the Photographers, alleging, *inter alia*: (1) Copyright infringement, in violation of the United States Copyright Act, 17 U.S.C. § 101, *et seq.*; (2) Fraud; (3) Breach of the duty of loyalty, if the Photographers are deemed employees; (4) Tortious interference with contractual relations; (5) Tortious interference with prospective economic relations; (6) UCL; (7) Common law unfair competition; and (8) Unjust enrichment.

From August 21, 2018, to October 23, 2018, the parties, collectively, filed seven motions for partial summary judgment. The Court denied all seven motions because the parties were attempting to circumvent the page limits imposed by Local Rule 11-6, and allowed each party to file one motion for summary judgment or partial summary judgment. Thereafter, Arshakyan, Lopes, and Rodrigues moved for partial summary judgment on the following: (1) A declaration that they are employees of X17 and not independent contractors; (2) A declaration that they are not exempt employees under

the "artistic profession" exemption of 8 Cal. Code Reg. § 11040; and (3) X17's counterclaims for fraud, breach of the duty of loyalty, tortious interference with contractual relations, tortious interference with prospective economic relations, statutory and common law unfair competition, and unjust enrichment. Then, Navarre moved for partial summary judgment on Lopes's, Maciel's, and Rodrigues's harassment claim against him. Finally, X17 joined in Navarre's motion, and moved for partial summary judgment on: (1) The Photographers' Wage and Hour Claims; (2) Lopes's, Maciel's, and Rodrigues's claim of employer liability for harassment; and (3) Its copyright counterclaims against Lopes and Maciel.

**Collateral Issues**

X17 requested the Court to defer considering Arshakyan's, Lopes's, and Rodrigues's motion, pursuant to Fed. R. Civ. P. 56(d), and permit X17 additional time to depose the Photographers, for a third time, to question them about factors relating to their employment, and to conduct further discovery regarding the Photographers' potential dealings with competing third-party photo agencies to substantiate, *inter alia*, X17's claim for breach of the duty of loyalty. However, X17 failed to specify what facts it sought or how those facts would be essential to oppose the summary judgment motion. *See Midbrook v. Holland*, 874 F.3d 604, 619-620 (9th Cir. 2017). Consequently, X17 failed to substantiate its request for additional discovery. X17 could have, and should have, been more diligent about conducting discovery earlier for this three year old case.

Additionally, the Photographers filed an *ex parte* application to strike X17's motion for partial summary judgment because X17 joined in Navarre's motion, which the Photographers argued violated the Court's November 13, 2018, order limiting each party to one motion. The Photographers' interpretation of the November 13, 2018, order is incorrect.

**Burdens on the motions for partial summary judgment**

When considering a motion for partial summary judgment, where the nonmoving party has the burden of proof at trial on a claim or issue, summary judgment should be granted when the nonmoving party fails to produce evidence to establish a *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). The moving party, however, has the initial burden to show that the nonmoving party does not have enough evidence to establish a *prima facie* case. *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008). If that burden is met, then, the burden shifts to the nonmoving party to establish, with admissible evidence, a *prima facie* case. *See Celotex*, 477 U.S. at 322.

When considering a motion for partial summary judgment on a claim or issue where the moving party has the burden of proof at trial, the moving party has the initial burden of establishing, with admissible evidence, a *prima facie* case. *See Celotez*, 477 U.S. at 323. If the moving party meets his initial burden on his motion, then the burden shifts to the non-moving party to show the existence of a triable issue of material fact to avoid the granting of a partial summary judgment. *See Celotex*, 477 U.S. at 323.

**Employee vs. Independent Contractor**

Arshakyan, Lopes, and Rodrigues, by way of their motion, seek a determination that they were incorrectly categorized by X17 as independent contractors and are, actually, employees under California law. Maciel did not join in that motion. X17 moved for partial summary judgment on, *inter alia*, the Photographers' Wage and Hour Claims, arguing, *inter alia*, that the Photographers are independent contractors, not employees. To resolve those two motions, the Court must, also, determine whether Maciel is an X17 employee or independent contractor.

Under California law, once a plaintiff has come forward with evidence that he provided services for an employer, he has presumptively established a *prima facie* case

of an employer/employee relationship. *See Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010). The burden, then, shifts to the employer to establish a *prima facie* case that the presumed employees are not employees, but rather independent contractors. *See Narayan*, 616 F.3d at 900.

Because the Photographers have set forth evidence that they provided services to X17, they have established a *prima facie* case that they had an employer/employee relationship with X17. *See Narayan*, 616 F.3d at 900. The burden, then, shifts to X17 to establish a *prima facie* case that the Photographers were, actually, independent contractors. *See Narayan*, 616 F.3d at 900.

For years, the prevailing test in California to determine whether an individual was properly characterized as an independent contractor or an employee was the multi-factor test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989). However, during the pendency of this action, the California Supreme Court decided *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), which set forth the "ABC" test as a new standard regarding employment characterization. The parties disagree as to which test should be applied here – the Photographers argued that *Dynamex* should be applied, while X17 argued that *Borello* should be applied. Further, X17's argument that *Dynamex* is not retroactively applicable is foreclosed by the Ninth Circuit's recent decision in *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 923 F.3d 575, 589-590 (9th Cir. 2019).

Without articulating a more specific rule, the Ninth Circuit vaguely recognized that *Dynamex*'s ABC test may not have fully displaced the *Borello* multi-factor test. *Cal. Trucking Ass'n. v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018). However, at least one California appellate court and various district courts have held that *Dynamex*'s ABC test applies only to IWC wage order claims and that non-wage order claims remain governed by *Borello*'s multi-factor test. *See Garcia v. Border Transp. Grp, LLC*, 28 Cal. App. 5th 558, 571 (2018). To the extent that the Photographers' claims are predicated on anything other than IWC wage orders, *Borello*'s multi-factor test will

be applied. *See Garcia*, 28 Cal. App. 5th at 571. To the extent that the Photographers' claims are predicated on IWC wage orders, *Dynamex*'s ABC test is applicable. *See Garcia*, 28 Cal. App. 5th at 571.

In *Borello*, the California Supreme Court set forth a non-exhaustive list of factors to weigh when determining whether a worker is an employee or an independent contractor: (1) Whether the hiring entity has the right to control the manner and means of accomplishing the result desired; (2) Whether the worker is engaged in a distinct occupation or business; (3) Whether that worker's occupation typically requires direction; (4) The skill required; (5) Who supplies the instrumentalities, tools, and the place of work; (6) Length of time for which the services are to be performed; (7) Method of payment; (8) Whether the work was part of the regular business of the hiring entity; and (9) Whether the parties believe they are creating an employer/employee relationship. 48 Cal. 3d at 350-351. Although no single factor is dispositive, and not all factors need to be considered, the factor that carries the most weight and significance is the extent of the hiring entity's right to control the manner and means of accomplishing the result desired. *See Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531-532 (2014).

It is undisputed that the Photographers were allowed to wear what they wanted, used their own camera equipment, drove their own cars, were paid per job, and were issued 1099 tax forms – all of which are indicative of independent contractor status. However, the parties dispute the amount of control, if any, X17 exerted over the Photographers. As part of their initial burden, the Photographers' have set forth evidence that Navarre controlled and dictated – and, absent affirmative instructions from Navarre, the Photographers would ask Navarre – when and where they should go in search of celebrities to photograph. Pursuant to the Photographers' evidence, the Photographers regularly presented Navarre with options of celebrities in different locations and Navarre would choose the celebrities to be photographed. Further, Navarre would tell the Photographers when to seek out certain celebrities and told them

to "go now," "go there this morning," "do it tomorrow again but start earlier," or "stay late."

X17 failed to set forth any admissible evidence to rebut the Photographers' evidence that Navarre controlled the Photographers' work. X17's attempt to recharacterize the Photographers' evidence to mean that Navarre merely suggested ideas to the Photographers fails to carry its burden. Further, the Photographers worked with X17 for a significant period of time and their work was part of X17's regular business. After weighing the factors, the *Borello* factors weigh in favor of an employer/employee relationship. *See Borello*, 48 Cal. 3d at 353.

Under the ABC test, to establish that a worker is an independent contractor, the hiring entity must prove: (A) That the worker is free from control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) That the worker performs work that is outside the usual course of the hiring entity's business; and (C) That the worker is customarily engaged in an independently established trade, occupation, or business. *Dynamex*, 4 Cal. 5th at 964.

Prong B focuses on whether a worker can be reasonably viewed as providing services to the hiring entity in a role comparable to that of an employee, rather than in a role comparable to that of a traditional independent contractor. *Dynamex*, 4 Cal. 5th at 959. Prong B requires the hiring entity to establish that it was not engaged in the same course of business as the worker. *Vazquez*, 923 F.3d at 596. The Court may consider: (1) Whether the work of the worker is necessary or merely incidental to that of the hiring entity; (2) Whether the work was continuously performed for the hiring entity; and (3) What business the hiring entity purports to be in. *Vazquez*, 923 F.3d at 597.

*Dynamex* provided a few examples to illustrate the contours of Prong B. When a retail store hires an outside plumber to repair a leak on its premises, the services of that plumber are not within the usual course of the retail store's business; therefore, the

plumber's services cannot reasonably be viewed as providing services to the retail store in a role comparable to that of an employee. *Dynamex*, 4 Cal. 5th at 959. By way of another example, when a bakery hires a cake decorator to work on a regular basis on its custom-designed cakes, the services of the cake decorator are within the usual course of the baker's business; therefore, the cake decorator's services can reasonably be viewed as providing services in a role comparable to that of an employee. *Dynamex*, 4 Cal. 5th at 960.

The situation, here, is analogous to the latter example. When a photo agency hires photographers to regularly photograph the agency's chosen subjects, the services of the photographers are within the usual course of the photo agency's business. *See Dynamex*, 4 Cal. 5th at 960. Accordingly, the Photographers' services can reasonably be viewed, here, as providing services in a role comparable to that of an employee. Therefore, because X17 failed to establish that the Photographers were not engaged in the usual course of business of X17, it failed to establish a *prima facie* case that the Photographers are independent contractors. *See Dynamex*, 4 Cal. 5th. At 964.

Accordingly, under both tests, the Photographers are X17's employees, not independent contractors. Thus, Arshakyan's, Lopes', and Rodrigues's motion for partial summary judgment for a declaration that they are employees of X17 and not independent contractors must be granted. The Court, *sua sponte*, finds that Maciel is, also, an employee of X17 and not an independent contractor as this determination was necessary to determine X17's motion.

**Wage and Hour Claims**

X17 argued that if the Photographers are its employees, they are, nevertheless, exempt from IWC wage order protections under the "artistic profession" exemption, pursuant to 8 Cal. Code Reg. § 11040. X17 bears the burden of establishing a *prima facie* case for this exemption. *See Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 282 (9th Cir. 2011).

Pursuant to 8 Cal. Code Reg. § 11040, employees who are primarily engaged in an artistic profession are exempt from IWC wage order protections. To prove that the Photographers are exempt artistic professionals, X17 and Navarre must prove, *inter alia*, that the Photographers spent more than half of their work time doing original and creative work. *See* 8 Cal. Code Reg. §§ 11040(1)(A)(3)(b), (2)(N). Assuming, *arguendo*, that photographing celebrities in their day to day lives is original and creative work, as defined by 8 Cal. Code Reg. § 11040, X17 failed to provide any admissible evidence that the Photographers spent more than fifty percent of their time engaged in such artistic activity. X17 did not provide any evidence of what the Photographers did while they were on location or how much time they spent actually photographing celebrities, as opposed to non-artistic activities such as driving to each location or waiting for celebrities to emerge. Rather, X17 argued that "art is made in the midst of hours of idleness" because idle time is inherently necessary in the creation of art and that the Court should count the time the Photographers spent waiting for celebrities to appear as time spent engaged in artistic activity. However, X17 provided no precedent or evidence that idleness, or laying in wait, can be considered under § 11040's time requirements. Even accounting for time the Photographers spent setting up equipment and contemplating the best angle for their photographs, X17 did not establish, with admissible evidence, that the Photographers spent over half of their time engaged in these artistic pursuits. Accordingly, X17 failed to establish that the artistic profession exemption applies to the Photographers. *See Campbell*, 642 F.3d at 282.

Thus, Arshakyan's, Lopes', and Rodrigues's motion for partial summary judgment for a declaration that they are not exempt under the artistic professions exemption must be granted. The Court, *sua sponte*, finds that Maciel is, also, not exempt under the artistic professions exemption . Further, X17's motion for partial summary judgment on the Photographers' Wage and Hour Claims must be denied.

**X17's Counterclaims**

The Photographers seek partial summary judgment on X17's counterclaims for fraud, breach of the duty of loyalty, tortious interference with contractual relations, tortious intereference with prospective economic relations, statutory and common law unfair competition, an accounting, and unjust enrichment. X17 bears the burden of establishing a *prima facie* case for each of those counterclaims. *See Celotex*, 477 U.S. at 322-323.

X17 argued that its counterclaims are based, in part, on the Photographers' sales of photographs to third-party photo agencies – Rodrigues made a sale in 2011, and Arshakyan and Lopes both made sales in 2012. While Arshakyan disputes that he sold photographs to a third-party, Rodrigues and Lopes admitted that they sold photographs to third-parties in 2011 and 2012, respectively.

X17 failed to provide any evidence that Arshakyan sold photographs to a third party. *See Celotex*, 477 U.S. at 323. Accordingly, X17 failed to establish a *prima facie* case on its counterclaims against Arshakyan to the extent that they are predicated on Arshakyan's alleged sale of photographs to third parties. *See Celotex*, 477 U.S. at 323.

The statutes of limitations for the counterclaims run, here, from two to four years. *See* Cal. Civ. Proc. Code §§ 338-339; *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016). Given that the original complaint and the counterclaims were filed on June, 2016, and August, 2017, respectively, the Photographers have met their initial burden of pointing out that the statutes of limitations on the counterclaims have lapsed to the extent that the basis for the counterclaims are sales that allegedly occurred in 2011 and 2012. *See Celotex*, 477 U.S. at 323.

X17 argued that its counterclaims are not based solely on those specific sales to third parties, and that it can provide evidence of other bases for its claims that are not barred by the statutes of limitations. However, X17 failed to substantiate this assertion with admissible evidence. *See Celotex*, 477 U.S. at 323.

X17, also, argued that the discovery rule, which delays accrual of a claim until a party knew or should have known of the wrongful conduct, applies here. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). X17 bears the burden of establishing that the discovery rule, indeed, applies. *See Breeser v. Menta Grp., Inc.*, 622 F. App'x. 649, 650 (9th Cir. 2015). X17 asserted, again through conclusory arguments, that because the Photographers hid the sales from X17 it was not aware of the sales until after the Photographers filed this lawsuit. However, X17 failed to provide any evidence to establish when or how it became aware of the sales. *See Hip Hop Beverage Corp. v. Michaux*, 729 F. App'x. 599, 600 (9th Cir. 2018). Moreover, with regard to X17's claims against Lopes, in particular, that argument is contradictory to Navarre's May 24, 2018, deposition testimony, where he testified that he was suspicious, albeit not absolutely certain, that Lopes was selling photographs to third-parties back in February, 2012. This information was enough for X17's counterclaims against Lopes to have accrued starting in 2012. *See Breeser*, 622 F. App'x. at 650. Thus, the discovery rule is inapplicable, here. *See Breeser*, 622 F. App'x. at 650.

Accordingly, Arshakyan's, Lopes', and Rodrigues's motion for partial summary judgment on X17's counterclaims must be granted to the extent that they are based on sales to third parties.

**Copyright Ownership and Infringement**

X17 seeks a declaration that it owns the copyrights to 5,000 photographs taken by Arshakyan. X17, also, seeks summary judgment on its claim of copyright infringement against Lopes and Maciel.

X17 argued that Maciel unlawfully distributed photographs of Britney Spears that were shot by Rodrigues. Maciel contends that he took those photographs.

X17, further, argued that Lopes unlawfully distributed photographs of Jennifer Lawrence, Emma Stone, Woody Harrelson, Orlando Bloom, and Katy Perry. X17

argued that one of its other photographers, Juliano Domingues, took those photographs and signed copyright transfer agreements conveying the copyrights to X17. X17, subsequently, registered those photographs with the United States Copyright Office. Lopes, in response, argued that X17 failed to provide sufficient evidence that Domingues was the photographer and that it is possible that Lopes took the photographs at issue.

The overarching question, here, is who owns the copyrights to the photographs at issue? X17 argued that if the Photographers are held to be employees, then the copyright ownership vested in X17 as the Photographers' employer because the photographs would have been works made for hire. *See* 17 U.S.C. § 101.

A "work made for hire" is, *inter alia*, a work prepared by an employee within the scope of employment. The Copyright Act does not define "employee" or "scope of employment," and state common law definitions of those terms are inapplicable. *Cmty for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-741 (1989). Rather, the Court must construe those terms in light of the federal general common law of agency. *Reid*, 490 U.S. at 739-741.

*Reid* set forth the following non-exhaustive list of factors to consider when determining whether an individual is an employee for purposes of the Copyright Act: (1) The right to control the manner and means by which the product is accomplished; (2) The skill required; (3) The source of the instrumentalities and tools; (4) The location of the work; (5) The duration of the relationship between the parties; (6) Whether the hiring entity has the right to assign additional projects to the hired party; (7) The extent of the worker's discretion over when and how long to work; (8) The method of payment; (9) The worker's role in hiring and paying assistants; (10) Whether the work is part of the regular business of the hiring entity; (11) Whether the hiring entity is in business; (12) The provision of employee benefits; and (13) The tax treatment of the worker. *Reid*, 490 U.S. at 751-752.

As previously discussed, X17 exerted a significant amount of control over the

Photographers, directed the location of their work, assigned projects to them and their work was part of X17's regular business. *See Reid*, 490 U.S. at 751-752. Moreover, given the similarities between the *Reid* factors and the *Dynamex* and *Borello* tests, the parties have not set forth, and the Court does not see, any reason why *Reid* would warrant a different outcome. In light of the circumstances of this case, the *Reid* factors weigh in favor of a finding that the Photographers were employees under the Copyright Act. *See Reid*, 490 U.S. at 751-752.

To determine whether the photographs taken by the Photographers were within the scope of their employment, the Court must consider whether the photographs were: (1) The kind the Photographers were employed to perform; (2) Occurred substantially within the authorized time and space limits; and (3) Actuated, at least in part, by a purpose to serve X17. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012).

With regard to Arshakyan, X17 seeks a declaration that it owns the copyrights to all 5,000 photographs that Arshakyan took from 2009 to 2016. X17 presented no evidence that Arshakyan took those photographs during the course of his employment with X17. Absent such evidence, a declaration that all 5,000 photographs were created within the scope of employment would be inappropriate.

With regard to the photographs of Britney Spears that X17 alleged Maciel unlawfully distributed, there is a dispute as to whether Maciel or Rodrigues took those photographs. The record before the Court is clear that both Maciel and Rodrigues were employees of X17. However, there is no evidence that the Britney Spears photographs were taken within the scope of either Maciel's or Rodrigues's employment with X17. If the photographs were, indeed, taken within the course of either Maciel's or Rodrigues's employment with X17, then copyright ownership would have vested with X17 as works made for hire. *See* 17 U.S. § 101.

With regard to the photographs X17 alleged Lopes unlawfully distributed, the parties, again, dispute who took those photographs. X17 argued that Domingues took

those photographs and contractually transferred their copyrights to X17. Lopes argued that X17 failed to set forth admissible evidence that Domingues took those photographs and that it is possible that Lopes took the photographs, in which case Domingues would not have had any copyright interests to transfer to X17.

Lopes is correct in that X17 failed to set forth admissible evidence that Domingues took the photographs at issue. Despite X17's contention, the transfer agreements between X17 and Domingues, alone, are insufficient to establish that Domingues took those photographs.

X17 failed to establish a *prima facie* case as to its copyright ownership over the 5,000 photographs Arshakyan took and the photographs that Maciel and Lopes are alleged to have unlawfully distributed. Thus, X17's partial summary judgment motion as to its copyright counterclaims must be denied.

**Harassment Claims**

Lopes, Maciel, and Rodrigues are Brazilian natives [collectively, "Brazilian Photographers"]. The Brazilian Photographers alleged that they were harassed by Navarre, and other X17 employees, based on their race, color, ancestry, and national origin. Navarre seeks partial summary judgment on the Brazilian Photographers' harassment claim against him, and X17 seeks partial summary judgment on the Brazilian Photographers' derivative claim of failure to prevent harassment.

As the moving party without the burden of proof at trial, Navarre and X17 have met their initial burden of pointing out that the Brazilian Photographers lack evidence to establish a *prima facie* case for harassment. *See Williams*, 552 F.3d at 938. Accordingly, the burden shifts to the Brazilian Photographers to establish, with admissible evidence, a *prima facie* case for harassment and failure to prevent harassment.

Claims under FEHA are analyzed the same way as claims under Title VII, 42 U.S.C. § 2000e. *Newell v. Global Steel Products Corp.*, 124 F.3d 212, *1 (9th Cir.

1997). To establish a claim of harassment premised on race, the Brazilian Photographers must show: (1) They were subjected to verbal or physical conduct of a racial nature; (2) The conduct was unwelcome; and (3) The conduct was sufficiently severe or pervasive to alter the conditions of their employment and create an abusive work environment. *See Vasquez v. Cty of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003).

The Brazilian Photographers declared and testified during depositions that Navarre called them "monkeys," told them to "go back to the jungle," and to "eat bananas," beginning in 2007 until the end of their employment relationships in 2015 and 2016. Navarre denied making those statements and argued that because the Brazilian Photographers failed to set forth documentary evidence that he made those statements they failed to establish a *prima facie* case. Navarre is incorrect. The Brazilian Photographers have set forth sufficient evidence that Navarre made those statements. Documentary evidence goes only to the weight and credibility of the evidence, not the sufficiency. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, because the Brazilian Photographers are the non-moving parties, here, their evidence must be believed and all reasonable inferences must be drawn in their favor. *See Anderson*, 477 U.S. at 255.

Navarre does not significantly dispute that his comments were racial in nature or that they were unwelcomed. However, he disputes whether those comments were made within the statute of limitations and whether they were sufficiently severe or pervasive to alter the conditions of the Brazilian Photographers' employment to create an abusive environment. *See Vasquez*, 349 F.3d at 642.

Pursuant to Cal. Gov't. Code § 12960, the Brazilian Photographers must file an administrative complaint with the California Department of Fair Employment and Housing within one year of the date upon which the alleged harassment occurred. *See Haskell v. Anheuser-Busch, Inc.*, 172 F.3d 876, *1 n.3 (9th Cir. 1999). The Brazilian Photographers filed their administrative complaint on June 14, 2016. Accordingly, the Brazilian Photographers must establish that Navarre made inappropriate comments after

June 13, 2015. *See Haskell*, 172 F.3d at *1 n.3. Although the Brazilian Photographers argued that Navarre began making those comments in 2007, there is sufficient evidence that he continued to make those comments through 2015 and 2016. Accordingly, the comments that were made after June 13, 2015, are actionable here. *See Haskell*, 172 F.3d at *1 n.3.

The issue, now, is whether those comments made after June 13, 2015, were sufficiently severe or pervasive to alter the conditions of the Brazilian Photographers' employment and create an abusive or hostile work environment. *See Vasquez*, 349 F.3d at 642. The Brazilian Photographers declared and testified that Navarre made those comments "a lot," "every week, every month, like all the time," and approximately twenty times a month. Thus, the Brazilian Photographers have set forth sufficient evidence that the statements were pervasive. *See Anderson*, 477 U.S. at 255.

The Brazilian Photographers must, also, show that those comments made their work environment both subjectively and objectively hostile. *See McGinest v. GTE Servs. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). Given the record before the Court, subjective hostility has been established. *See McGinest*, 360 F.3d at 1113.

In evaluating the objective hostility, the Court must consider the following factors: (1) The frequency of the discriminatory conduct; (2) Its severity; (3) Whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) Whether it unreasonable interfered with an employee's work performance. *See McGinest*, 360 F.3d at 1113. The first factor is inversely related to the second and third factors – the more severe or serious the conduct, the less frequent the conduct needs to be to be objectively hostile. *McGinest*, 360 F.3d at 1113-1114. Although the statements were more akin to mere offensive utterances than physically threatening, there is sufficient evidence that the statements were frequent and pervasive throughout the Brazilian Photographers' working relationship with Navarre and X17. *See McGinest*, 360 F.3d at 1113-1114. Although "not every insult or harassing comment will constitute a hostile work environment, repeated derogatory or humiliating

statements can constitute a hostile work environment." *See McGinest*, 360 F.3d at 1115. All factors considered, the Brazilian Photographers have established a *prima facie* case that their work environment at X17 was objectively hostile. *See McGinest*, 360 F.3d at 1113-1115.

Navarre argued that the Brazilian Photographers cannot maintain a harassment claim based on those comments that were made in their absence. However, personal observation is not the only way that one can perceive, and be affected by, harassing conduct in the workplace. *Beyda v. City of L.A.*, 65 Cal. App. 4th 511, 521 (1998). One can, also, be affected by knowledge of harassment. *Beyda*, 65 Cal. App. 4th at 521. The Brazilian Photographers have set forth sufficient evidence that they knew about the harassment of others beyond mere workplace gossip. *See Beyda*, 65 Cal. App. 4th at 521.

Accordingly, the Brazilian Photographers have set forth a *prima facie* case for harassment against Navarre. Navarre's motion for partial summary judgment on this claim must, therefore, be denied.

The sole basis for X17's motion for summary judgment on the Brazilian Photographers' claim for failure to prevent harassment is that the Brazilian Photographers cannot maintain this derivative claim against X17 because the predicate claim against Navarre fails. Accordingly, X17's motion as to the Brazilian Photographers' claim for failure to prevent harassment must be denied.

Accordingly,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Arashakyan's, Lopes's, and Rodrigues's motion for partial summary judgment [dkt # 122] be, and hereby is, 𝔊𝔯𝔞𝔫𝔱𝔢𝔡 as to: (1) A declaration they are employees of X17 and not independent contractors; (2) A declaration that they are not exempt employees under the artistic profession exemption; and (3) X17's counterclaims for fraud, breach of the duty of loyalty, tortious interference with contractual relations, tortious interference with prospective economic relations,

statutory and common law unfair competition, an accounting, and unjust enrichment to the extent that they are based on sales to third parties.

**It is further Ordered**, *sua sponte*, that Maciel is an employee of X17 and not an independent contractor and is not an exempt employee under the artistic profession exemption.

**It is further Ordered** that Navarre's motion for partial summary judgment [dkt # 134] be, and hereby is, **Denied**.

**It is further Ordered** that X17's motion for partial summary judgment [dkt # 142] be, and hereby is, **Denied**.

**It is further Ordered** that the Photographers' *ex parte* application to strike X17's motion for partial summary judgment [dkt # 145] be, and hereby is, **Denied**.

Date: June 21, 2019

_____
Terry J. Hatter, Jr.
Senior United States District Judge