AL MOHAJERIAN, CSBN 182013
ANN ANOOSHIAN, CSBN 170264
MOHAJERIAN, A Professional Law Corp.
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Tel: (310) 556-3800/Fax: (310) 556-3817
Email: al@mohajerian.com; ann@mohajerian.com

*Attorneys for Defendants X17, Inc. and Francois Navarre*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HAKOP ARSHAKYAN, an individual, MAXIMILIANO LOPES, an individual, ROBERTO MACIEL, an individual, SANDRO RODRIGUES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>X17, INC., a California corporation, FRANCOIS NAVARRE, an individual,<br><br>Defendants. | **DECLARATION OF BRANDY NAVARRE IN SUPPORT OF DEFENDANTS' MOTIONS FOR (i) AN ORDER VACATING THE COURT'S JUNE 21, 2019 RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND (ii) AN ORDER FOR RELIEF TO FILE A CROSS COMPLAINT AGAINST BACKGRID USA INC**<br><br>*[Concurrently filed with Motions for Order Vacating the Court's June 21, 2019 Ruling on Plaintiffs' Motion for Partial Summary Judgment, and for Relief to Add Necessary Party Backgrid USA; Declarations of Al Mohajerian and Francois Navarre]*<br><br>Notice Filed December 5, 2019<br>Time: Under submission<br>Dept: 9B<br><br>Pretrial conference date: March 16, 2020 |

I, Brandy Navarre, declare the following:

    1.    I work with my husband Francois Navarre for his company, X17, Inc, which is a Defendant in the above-referenced case filed by Plaintiffs Hakop Arshakyan, Maximiliano Lopes,

1. Roberto Maciel, and Sandro Rodriguez ("Plaintiffs"). My title is vice-president of X17, Inc. One LLP represented X17 and my husband in the wage and hour lawsuit filed by the above-mentioned Plaintiffs. I have personal knowledge of the following, and if called upon as a witness, I will testify to the following facts. I make this declaration in support of Defendants' motions for an order vacating the Court's June 21, 2019 ruling on Plaintiffs' motion for partial summary judgment and Defendant's motion seeking relief to file a cross-complaint against Backgrid.

2. The firm One LLP represented X17 since 2006 in trademark filings, a defamation lawsuit, and in copyright issues. Our attorneys unceremoniously withdrew as counsel as trial approached. When we were served with this present complaint, in 2016, One LLP agreed to handle the entire case. We were not advised to seek a labor law attorney. At the time, we didn't have cause to question our counsel John Tehranian's representation that he had the expertise to handle a wage and hour dispute.

3. Multiple attorneys have now told my husband Francois (Regis) Navarre and myself that One LLP had a clear and un-waivable conflict of interest.

4. On November 1, 2019 One LLP sent a letter to Al Mohajerian and and X17 alleging that a 2006 engagement letter with another firm constitutes a waiver of the conflict with One LLP. The exhibits presented with the letter – significantly redacted to the point of changing the intent of my words -- further implicates them in this continued fraud, as I attest below.

5. One LLP attached to their November 1, 2019 letter, a redacted 2006 engagement agreement which likely is null and void given that the waiver of conflict of an "unrelated" matter would give One LLP a blanket license to represent parties with whom there is a direct and actual conflict of interest which, of course, a client cannot waive.  Further, they redacted the date on this contract which was approximately Oct/Nov 2006 with law firm <u>Turner, Green, Afrasiabi, & Arledge</u> — NOT One LLP and NOT for the matter Arshakyan vs X17 et al.

6. One LLP did NOT actively pursue discovery — Francois and I demanded many times that we subpoena communications between Plaintiffs and officers of Backgrid that would prove a relationship between both parties during relevant periods beyond what may have been evident in Plaintiffs' bank statements.  On July 28, 2017 I emailed John Tehranian regarding

Declaration of Brandy Navarre
- 2 –

Plaintiff Maciel's licensing of our iconic Britney Spears 'umbrella attack photos' via Backgrid to our clients. I pointed out that our copyright transfer agreement for those images was signed by Plaintiff Rodrigues which would suggest Maciel is either infringing the images by providing them to Backgrid for license OR that he doesn't know who actually shot those frames. One LLP never suggested we subpoena from Backgrid a full accounting of archive images provided to them by Plaintiffs — all images shot before the date they started working for Backgrid.

7. In an email on April 25, 2018 to Tehranian, I suggest we join Backgrid as a party. This is the email One LLP has listed as Exhibit B to their November 1, 2019 letter … they quote only part of my sentence which <u>completely changes the nature of the communication</u> (and REDACT the rest) - they quote "I know I expressed concern that it could trigger a copyright claim by Backgrid since their founding members are all former X17 photographers whose archives rest with X17" but the rest of the sentence is "… ***but the benefits might outweigh the risks.***" Their use of this selectively redacted email to change the intention of my directive is abhorrent. They also redact the previous sentences in which I tell One LLP we're interested in deposing Backgrid's officers.

8. On April 27, 2018 I emailed One LLP again about Plaintiff Maciel's license of X17's image via Backgrid.

9. On May 7, 2018 I emailed Tehranian suggesting we subpoena records from Backgrid "related to all purchase of images/videos from plaintiffs and/or get an officer of the company on the record about the plaintiffs' history w/ the agency". \

10. One LLP's May 7, 2018 email (exhibit C to their November 1, 2019 letter) doesn't include the email sent on that same date at <u>10:50 am</u> that confirms we wanted to move forward serving the subpoenas to Backgrid. The exhibit only contains the <u>previous email at 10:32 am</u> in which I asked them to hold off. I later confirmed it was okay to move forward and again in a follow-up email in this thread sent at 10:52 am, I asked if we were requesting all correspondence between Plaintiffs Arshakyan and Rodrigues and AKM-GSI (now Backgrid), which was ignored by One LLP.

11. In an email on July 12, 2018 I asked One LLP to challenge AKM-GSI's (now Backgrid) refusal to produce communications with Plaintiffs during the relevant period and One LLP didn't reply to that request, only to other issues raised in the email.

12. Again on July 12, 2019, I sent an email to Tehranian asking why the subpoena for text messages between Plaintiffs and Backgrid was not pursued. It was our understanding this was part of the outstanding motion to compel with the magistrate judge and that it was still active.

13. Tehranian replied in a separate thread saying, "Yes, the pending motion on which the magistrate never ruled did include requests for texts between the Plaintiff and Backgrid, among several other items. A copy of the motion/letter to the magistrate is attached here, so you can see what we requested. The Magistrate's failure to even address the request to compel is a mystery and we may want to follow up with her now and see what happened and why it was never dealt with. We can certainly push on that." This was not followed up on earlier for an unknown reason. IT TURNS OUT ONE LLP HAD ALREADY WITHDRAWN THE SUBPOENA WITHOUT OUR CONSENT, THIS RESPONSE FROM TEHRANIAN IS A FALSE STATEMENT.

14. On July 23, 2019 I wrote to John Tehranian asking if One LLP ever subpoenaed Backgrid's contracts with Plaintiffs. We received no reply.

15. On August 26, 2018 I wrote an email indicating I thought we had in our possession Plaintiffs' 1099's from Backgrid. We did not. That was not corrected by One LLP.

16. I don't have any record of X17 ever asking for an agreement (as One LLP claims in their November 1, 2019 letter "at X17's direct behest"), or being notified that One LLP "struck a deal" with Plaintiffs' counsel for pay records and commission statements in lieu of all items requested in the subpoena. One LLP claims "X17 expressly and explicitly decided not to proceed with any efforts to compel due," yet they offer no written evidence of this and Tehranian mentions the outstanding motion to compel in subsequent emails. They contradict themselves.

17. One LLP stated in their November 1, 2019 letter that it had "long ago disclosed its relationship with Backgrid to X17". This is untrue. Their first evidence of such is in the November 14, 2018 email in which — regarding a different matter, unrelated to Arshakyan — I asked if

Joanna Ardalan could handle copyright infringement matters for X17 on contingency since Chris Arledge had said One LLP would no longer do so. Arledge's reasoning was that getting settlements for X17 was not a realistic way for us to pay down our balance on Arshakyan even though it absolutely was, also considering One LLP was pocketing hefty commissions for doing so. In this email to John (and in a phone conversation around the same time), he said he was glad we mentioned working with Ardalan on these matters as she fell outside of the One LLP banner and we could use that as a work-around for Arledge's "no more contingency cases" rule. Further, in an in-person meeting with John Tehranian and Oscar Orosco-Bottello at One LLP's Beverly Hills office sometime around early summer 2018, I told John Tehranian that in my discussions with digital-fingerprinting tech company Okularity — which identifies infringement of images with matching technology and then offers legal assistance in pursuing payments — that the company's CEO told me Joanna Ardalan was handling copyright cases for them and that she mentioned X17 to him. Tehranian was surprised — he didn't know about this work Ardalan was doing — but he said he guessed it was okay since she was a 'freelancer'. We now know she is not a freelancer, she is a partner of One LLP.

18. One LLP founding partner Peter Afrasiabi is listed on all One LLP Backgrid matters as an attorney of record and while to my knowledge he didn't handle any legal matters regarding Arshakyan, I spoke with him multiple times about X17's bill with One LLP on the matter and he did one copyright contingency case for X17 during the time he was also engaged with Backgrid.

19. In their November 1, 2019 letter One LLP is citing evidence that there was no direct conflict of interest in their representation of Backgrid and X17 simultaneously by suggesting that because their dealings with Backgrid didn't involve the Arshakyan Plaintiffs, there was no conflict. The conflict is explicit. In the financial records from Plaintiff, there is over $70,000 in payment to one of the Plaintiffs during the same time period that Plaintiffs alleged they were employees of X17. The Plaintiffs were engaged in the business of taking photographs of celebrities. They sold some photos to X17 and some to Backgrid. One LLP knew the Plaintiff secured employment with Backgrid after they filed suit against X17. Therefore One LLP was representing us while they knew they represented the employer of the Plaintiffs in our case.

20. During late August of 2019, we learned that One LLP were the attorneys of record for Backgrid on a number of cases from 2018 to 2019. When I was doing research on a separate matter, I saw the filing of <u>Backgrid v Sofia Richie</u> dated January 2, 2018. X17 was aware of "freelancer" Joanna Ardalan's relationship with Backgrid previously but X17 was unaware of the fact that she was actually a partner at One LLP (due to Tehranian's misrepresentation), was chair of One LLP's litigation team, had access to X17 documents in the Arshakyan matter, and FURTHER, that founding partner Peter Afrasiabi was listed on every Backgrid matter as counsel with Ardalan. Upon discovering the fact that One LLP represented Backgrid in 2018 and onward, , we sent numerous emails to One LLP requesting updates on Backgrid subpoenas (listed above and attached here), to see what One LLP's reaction would be and yet Tehranian basically ignored these questions and didn't address them in follow-up emails. And of course One LLP withdrew from the case only a month later, right after we had made a $90,000 payment to them. One LLP cited the reason for withdrawing was due to our 'non-payment'.

21. We were cheated out of fair representation and even after paying over $600,000.00 to One LLP, we were left in a horrible situation due to their actual conflict AND their negligence in this case.

22. One LLP had a much longer and deeper history with Backgrid, predating the filing of Arshakyan v. X17. Backgrid is a competitor of X17, therefore Backgrid would have a direct financial interest by putting X17 out of business through a very expensive lawsuit filed by its employees. One of the officers of Backgrid, Alexander deMacedo, even said to my husband Francois (Regis), "Ha, ha, we have the same lawyer and they [the lawyers] told us to ignore the subpoena," and word on the street was that Backgrid fed the idea to Plaintiffs to file the suit as a way to hurt their main competitor, X17.

23. Early in One LLP's representation of us, I mentioned Backgrid in an email to Mr. Tehranian, relating to a photo copyrighted by X17 that had been attributed to Backgrid on the web site DailyMail.com - an online publication that is a client of both X17's and Backgrid's. I told Mr. Tehranian that the owner of Backgrid was a photographer who sold photos to X17 in the past, for many years.

24. My husband, in my presence, verbally mentioned to Mr. Tehranian a few weeks into the case, that Plaintiffs were working with Backgrid at the same time they were selling to us.

25. In February of 2018, we mentioned Backgrid again to Mr. Tehranian, in a conversation relating to its owner and payments by Backgrid for photos taken by Plaintiffs which were made during the time Plaintiffs were also selling photos to X17 (of which X17 held ownership and licensed to other publishing entities).

26. No mention of One LLP's representation of Backgrid or One LLP's possession of Backgrid's records/financial was divulged to us.

27. We had asked Mr. Tehranian to bring Backgrid in as a party, as we were confident that Backgrid had paid photographers for photos already sold to us, but he never really answered my request. Later – even a few months ago– we suggested we go after Backgrid for copyright infringement and he was unresponsive. The financial records received from Plaintiffs show that at least two of them were receiving substantial compensation from Backgrid during the same time they alleged they were employed by X17.

28. We know that plaintiff Max Lopes sold Jennifer Lopez photos to Backgrid during the time he was working with X17. He testified to this in his first deposition and in fact, perjured himself at that time by saying it was the only set of photos he sold to Backgrid during the time he also sold photos to X17 because in his second deposition he finally admitted to selling multiple sets of photos to Backgrid during his time with X17. Plaintiff Max Lopes also testified in his deposition that his partner Jose sold Katie Holmes photos to 'Flynet' which is now Backgrid, during the time he worked with X17. Evidence of this is in Wells Fargo statements of Plaintiff Lopes.

29. The damage One LLP did to our case and the absolute breach of trust we thought we had established with the firm after giving them our business for almost fifteen years has been extremely painful for my husband and for me. The money we've spent to defend ourselves and our company in this lawsuit – and then having it used for a strategy so significantly influenced by our attorneys' relationship with the Plaintiffs' employers – has put such a serious financial strain on our 25-year-old mom-and-pop business that it will likely not survive. The stress of this three-year long case hanging over us and the financial decisions we've had to make because of it have frankly altered

the course of our personal lives as well.  That One LLP has acted in such an unethical, negligent manner to the extreme detriment of our case is shocking to me.  I look back on how much of our previous strategy in this case would have changed had we had attorneys not basing their decisions on a relationship that involved "sleeping with the enemy."  Had we put an end to this lawsuit in its first year, I could have spent my time and money these past two and a half years doing something else – something more constructive and more useful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated December 5, 2019         ___/s / Brandy Navarre_____

*Brandy Navarre, Declarant*

CERTIFICATE OF SERVICE

Arshakyan et al v. X17 et al
US District Court case no. 2:16 -cv-04305-TJH-RAO

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

    I am employed in the county of LOS ANGELES, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1901 Avenue of the Stars, Suite 1100, Los Angeles, CA 90067.

    On December 5, 2019, I served the foregoing document described as **DECLARATION OF BRANDY NAVARRE** in this action _x_ by placing __ the original _x_ a true copy thereof enclosed in sealed envelopes addressed as follows:

See Attached Service List

_X_   **BY U.S. MAIL**   I caused said envelope to be deposited in the U.S. Mail, as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid, at Los Angeles, California, in the ordinary course of business.  I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

___   **BY EMAIL OR ELECTRONIC TRANSMISSION:**    As a courtesy, I caused the DOCUMENTS to be sent to the person[s] at the email addresses listed above. I did not, within a reasonable time after the transmission, receive any electronic message or other indication that the transmission was unsuccessful.

Executed on December 5, 2019 at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     /s/ Anna Contreras
    Anna Contreras